McGEE, Judge.
Gregory P. Muzzillo (plaintiff) and Esther Greene Muzzillo (defendant) were married on 6 June 1981. They had five children, the eldest of whom was born in 1982 and the youngest of whom was born in 1993. Plaintiff and defendant separated in early March 2000 and divorced on 23 May 2001. Plaintiff appeals from a child support order entered on 25 November 2002. We affirm.
Plaintiff filed a complaint seeking child custody, child support, and equitable distribution on 17 October 2000. Defendant asserted counterclaims for equitable distribution, post separation support, alimony, child custody, child support, and attorney'sfees. A hearing was held over the course of nine days beginning 29 April 2002 and concluding 16 July 2002.
Evidence showed that plaintiff and defendant were married on 6 June 1981. During their marriage, plaintiff owned and operated different companies. At the time of trial, plaintiff was the chief executive officer of Proforma, Inc. and "was earning a salary of approximately $250,000." In addition to salary, plaintiff received an annual distribution in the amount of approximately $200,000. Evidence also showed that plaintiff had ownership interests in various companies worth slightly less than $2,000,000. By contrast, defendant did not work outside the home for most of the couple's marriage and since the separation, defendant worked only a handful of days at a temporary job for $7.50 per hour. Plaintiff and defendant developed a consent order for shared custody through mediation, but child support was resolved by the trial court.
The trial court made the following findings of fact in its child support order:
13. Defendant-Wife is entitled to child support from Plaintiff-Husband in an amount necessary to meet the reasonable needs of the children born to the marriage for health, education and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the children and the parties, the child care and homemaker contribution of each party and other facts of this particular case.
14. Defendant-Wife is a homemaker who is dependent upon the Plaintiff-Husband for financial support for the health, education and maintenance of the minor children born of the marriage.
15. Since August 2000, a few months after theparties' separation, they have equally shared in the physical custody of the five children, by alternating weeks during which the children live with each parent.
16. Plaintiff-Husband is an able-bodied man, gainfully employed as the CEO of Proforma, Inc. and has significant earnings, and the ability, through his company, to have distributed to him, whatever funds he needs to pay [child support] to Defendant-Wife.
17. Husband's company pays all of his travel expenses, provides him a car, car insurance, and other benefits. Husband's ability to pay child support is unquestioned.
18. Defendant-Wife has earned no income, nor has she had any of significance during the marriage or the separation. She has earning capacity but is not motivated to use it. She has made no effort to research what retraining is available to her, at what cost, over what time period, and has not even become computer literate during the two years of separation, because she has no intention of earning any income.
19. The Court cannot find that Defendant-Wife currently has the capacity to earn much more than minimum wage; and based on the evidence, if she were earning minimum wage, she'd spend it all on the children, leaving no significant funds for her own use.
20. The Court expects, however, that Wife will take steps in the near future to develop, and use, her earning capacity.
21. From August 1, 2002 through May 31, 2003 or when the former marital residence is sold and closed, whichever occurs first, [plaintiff] shall continue to pay all support for the children as he has under the temporary child support order filed on October [10], 2001. Upon the sale of that home or May 31, 2003, whichever occurs first, [plaintiff] shall increase his child support obligation to $4,000.00 per month, as provided hereinafter.
The trial court then detailed the shared family expenses andthe individual child expenses from the previous child support order, finding that the shared family expenses were $16,904.98 per month, and that the children had the "reasonable and necessary individual expenses" of $1,618.00 when they were with defendant. The trial court also found that "[p]laintiff-[h]usband pays directly and shall continue to pay, the mortgage, electricity, heat, water, cable tv, yard maintenance, and car payment until the car [is] paid completely." The trial court then found that:
24. Beginning June 1, 2003 or upon the closing of the sale of the former marital residence, whichever first occurs, the child support amount needed by Defendant-Wife shall change because Defendant-Wife will be paying her own mortgage and other household bills. The amount will also change because the twins, who turned 18 years of age on August 25, 2002, will complete high school in June 2003, which reduces Defendant-Wife's expenses for the children by $500.00 per month below that which otherwise would have been ordered, resulting in individual children expenses, while in Defendant-Wife's care, for the remaining two minor children of $1,117.00 per month.
25. The amounts needed for the benefit of the minor children to be paid from Plaintiff-Husband to Defendant-Wife after June 1, 2003 or upon the closing of the sale of the former marital residence, whichever first occurs, has been determined from Plaintiff-Husband's marked-up affidavit of financial standing for Defendant-Wife, except the Court allows a housing expense of $3,000.00 per month for Defendant-Wife and the children.
The trial court determined that as of 1 June 2003, or as of the sale of the former marital residence, whichever occurred first, the shared family expenses would be $5,565.00 per month and the children's individual expenses would be $1,117.00 per month. The trial court found that defendant needed these amounts for the careof the children who were with her fifty percent of the time. It further found that these amounts excluded the "needs and expenses of the children while residing with and in the joint custody of [p]laintiff-[h]usband." Plaintiff was also found to be responsible for the children's expenses that he had paid during the period of separation and since the divorce, including health insurance, other medical and dental expenses, clothing expenses, education expenses, and expenses associated with recreation and vacations.
Based on the foregoing findings of fact, the trial court ordered plaintiff to pay $2,738 per month in child support until 1 June 2003, or until the sale of the former marital residence, whichever occurred first. Plaintiff would then pay $4,000.00 per month in child support. The trial court also ordered plaintiff to continue paying the expenses of the minor children that he had been paying during the period of separation and after the divorce.
This order regarding child support, as well as orders regarding alimony, equitable distribution and attorney's fees, was entered on 25 November 2002. Plaintiff filed three separate Rule 59 motions dated 11 December 2002, requesting a new trial on the issues of child support, attorney's fees and equitable distribution. Prior to obtaining a ruling on these motions, plaintiff filed two notices of appeal on 23 December 2002 regarding the 25 November 2002 orders for child support and attorney's fees. Plaintiff's Rule 59 motions were heard by the trial court on 27 January 2003, and an order denying plaintiff's motion for a new trial on the issue of child support was entered on 4 March 2003. In an order dated 2 May 2003, the trial court amended its final judgment and order of equitable distribution, determining all property claims pending between plaintiff and defendant. Plaintiff and defendant filed a consent order dealing with custody on 22 May 2003. Plaintiff filed a notice of appeal of the amended final judgment and order of equitable distribution on 10 June 2003.
Although plaintiff did not specifically include the 25 November 2002 child support order in his 10 June 2003 notice of appeal, his arguments on appeal pertain only to the order for child support. We note that pursuant to N.C.R. App. P. 28(b)(6), plaintiff's assignments of error six through nine regarding the amended judgment and order of equitable distribution are not argued, and therefore are deemed abandoned.
The first issue before us is whether our Court has jurisdiction to consider plaintiff's appeal. Rather than waiting for the trial court to issue an order on his motion for a new trial on the issue of child support, plaintiff filed a notice of appeal on 23 December 2002, appealing the 25 November 2002 order for child support. In his 23 December 2002 notice of appeal, plaintiff stated he had
timely filed and served a Motion pursuant to Rule 59, Rules of Civil Procedure, and that Motion is pending. This Notice of Appeal, however, is being entered should it be determined that such Motion is untimely or otherwise deficient to toll the period for taking appeal.
We recognize that plaintiff may have been trying to preserve his appeal of the child support order, but the North Carolina Rules ofAppellate Procedure already provide that:
if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the 30-day period for taking appeal is tolled as to all parties until entry of the order or its untimely service upon the party, as provided in subsections (1) and (2) of this subdivision (c).
N.C.R. App. P. 3(c)(3).
By filing a notice of appeal, plaintiff not only divested the lower court of jurisdiction, see N.C. Gen. Stat. § 1-294 (2004), but he also set in motion the appellate review process on the issue of child support. "Neither the North Carolina Rules of Civil Procedure nor the North Carolina Rules of Appellate Procedure provide for holding a premature notice of appeal `in abeyance' or treating it as a `nullity' pending the resolution of motions . . . filed by appellants." Curry v. First Fed. S&L Ass'n, 125 N.C. App. 108, 112, 479 S.E.2d 286, 289, disc. review denied, 346 N.C. 278, 487 S.E.2d 544 (1997). Plaintiff suggests that the child support order was not appealable when he filed his notice of appeal because it was an interlocutory order. Indeed, our Court again recently stated that orders entered in family law cases prior to the final resolution of all claims pending between the parties are interlocutory orders. See Evans v. Evans, 158 N.C. App. 533, 534, 581 S.E.2d 464, 465 (2003). Furthermore, "[g]enerally, there is no right to appeal from an interlocutory order." Flitt v. Flitt, 149 N.C. App. 475, 477, 561 S.E.2d 511, 513 (2002). However, these arguments ignore that plaintiff had already begun the process of appellate review. Now, plaintiff seeks to use his 10 June 2003 notice of appeal from the amended final judgment and order of equitable distribution to revive his right to appeal the child custody order, an appeal he forfeited when he failed to properly perfect his earlier appeal, or to withdraw it. Plaintiff's appeal on the issue of child support is thus subject to dismissal. However, we note that defendant has not moved to dismiss plaintiff's appeal, and we issue a writ of certiorari pursuant to N.C.R. App. P. 21(a)(1) to consider the merits of the issues presented.
I.
Plaintiff first argues that the trial court erred by failing to follow the clear mandate set forth in N.C. Gen. Stat. § 50-13.4 in setting plaintiff's monthly child support obligation. N.C. Gen. Stat. § 50-13.4(c) (2003) states:
[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and of the parties, the child care and homemaker contributions of each party, and other facts of the particular case.
Plaintiff argues that the trial court erred when it did not make specific findings of fact regarding the parties' estates, earnings, and conditions. In support of this argument, plaintiff cites Newman v. Newman, which states that "[n]ot only must the trial court hear evidence on each of the factors listed above, but the trial court must also substantiate its conclusions of law by making findings of specific facts on each of the listed factors." Newman,64 N.C. App. 125, 128, 306 S.E.2d 540, 542 (referring to factors set forth in N.C.G.S. § 50-13.4(c)), disc. review denied, 309 N.C. 822, 310 S.E.2d 351 (1983). The Newman Court also stated: "Further, the trial court must hear evidence and make findings of fact on the parents' income, estates (e.g., savings; real estate holdings, including fair market value and equity; stocks; and bonds) and present reasonable expenses to determine the parties' relative ability to pay." Id. (citing Steele v. Steele, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468-69 (1978)). Plaintiff asserts that the trial court did not make specific findings of fact regarding these elements where the order merely stated the following as findings of fact:
16. Plaintiff-Husband is an able-bodied man, gainfully employed as the CEO of Proforma, Inc. and has significant earnings, and the ability, through his company, to have distributed to him, whatever funds he needs to pay [child support] to Defendant-Wife.
17. Husband's company pays all of his travel expenses, provides him a car, car insurance, and other benefits. Husband's ability to pay child support is unquestioned.
Plaintiff further asserts that these findings of fact were not sufficiently specific under Coble v. Coble, in which our Supreme Court stated that
an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to "meet the reasonable needs of the child" and (2) the relative ability of the parties to provide that amount. These conclusions must themselves be based upon factual findings specific enough to indicate to the appellate court that the judge below took "due regard" of the particular "estates, earnings, conditions, [and] accustomed standard of living" of both the child and the parents. It is a question of fairness and justice to all concerned.
Coble, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (emphasis and alteration in original) (quoting N.C.G.S. § 50-13.4(c)). We disagree.
As our Court recently stated, "[t]he trial court is given broad discretion in child custody and support matters. Its order will be upheld if substantial competent evidence supports the findings of fact." Meehan v. Lawrance, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2004). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). In this case, plaintiff does not take exception to the substance of the findings, just to the fact that perhaps they are not as specific as our Courts generally prefer. Even if plaintiff had excepted to these findings, however, they are amply supported by evidence in the record. As plaintiff concedes in his brief, there was considerable evidence presented at trial showing that plaintiff was the chief executive officer of Proforma, that he earned $250,000 in salary and received almost an additional $200,000 in distribution income. Plaintiff also listed in his financial affidavit a monthly gross income of $38,490. Plaintiff also concedes that his ownership interests in different companies totaled approximately $2,000,000. Plaintiff's only argument is that despite being presented with all this evidence, the trial court failed to makespecific findings of fact as to plaintiff's income or estate in its child support order. Though it is a better practice to make specific findings of fact regarding the parties' precise income and estates, the findings in the 25 November 2002 order are specific enough to indicate that the trial court took "due regard" of the incomes and estates of each party to determine their abilities to pay child support. See Coble, 300 N.C. at 712, 268 S.E.2d at 189. Since these findings of fact are substantially supported in the record, the trial court did not err.
Plaintiff further argues, however, that the trial court erred because the order for child support was not based on the current reasonable needs and expenses of the children. Plaintiff cites as error the fact that the trial court found the needs and expenses of the children to be as they were determined to be under a prior temporary order for child support. However, "`[n]o decisions in North Carolina specifically indicate that it is improper for a trial court to use orders from temporary hearings or contempt hearings in the same case to support permanent custody orders.'" Davis v. McMillian, 152 N.C. App. 53, 56, 567 S.E.2d 159, 161 (2002) (quoting Raynor v. Odom, 124 N.C. App. 724, 728, 478 S.E.2d 655, 657 (1996)), disc. review denied, 356 N.C. 669, 577 S.E.2d 114 (2003). The trial court could also have taken judicial notice of its prior order. See Davis, 152 N.C. App. at 56, 567 S.E.2d at 161. Moreover, plaintiff presented no evidence as to whether, or how, the needs and expenses of the children have changed since the prior order was entered. Finally, contrary to plaintiff'sargument, the trial court made very specific findings of fact as to the needs and expenses of the children, listing specific expenses of meals, grooming, laundry, and vacations in its order. These figures are supported by competent evidence in the record, including the financial affidavits submitted by both parties.
Plaintiff also argues that the trial court erred by speculating what the future needs and expenses of the children would be, but he does not state how this is error. As noted earlier, the trial court has broad discretion in child support matters, and "[a]bsent a clear abuse of discretion, a judge's determination of what is a proper amount of support will not be disturbed on appeal." Plott v. Plott, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985) (citing Beall v. Beall, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976)). Plaintiff does not assert or show that the trial court abused its discretion and we find nothing in the record showing such an abuse of discretion. Thus, we find this assignment of error to be without merit.
II.
Plaintiff next argues that the trial court abused its discretion in ordering him to be responsible for all of the children's expenses when the evidence showed that the parties were equally sharing legal and physical custody. Plaintiff argues that N.C. Gen. Stat. § 50-13.4 requires both parents to be primarily liable for the support of their children. Plaintiff seems to interpret section (b) of this statute, which states: "[i]n the absence of pleading and proof that the circumstances otherwisewarrant, the father and mother shall be primarily liable for the support of the minor child," to mean that the parents share this liability equally. Plaintiff supports this argument by asserting that child support contributions should be equal between the parents because a separate worksheet is required when the parents are "truly sharing in the custody and care of their children." Plaintiff therefore argues that the trial court erred because he was ordered to pay one hundred percent of the shared and individual expenses of the children regardless of whether the expenses would be incurred by him or by defendant. We reject plaintiff's argument.
"A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980). Here, plaintiff makes no such showing. Plaintiff first argues that the intent of N.C. Gen. Stat. § 50-13.4(b) is to require that both parents equally support their children when the children share equal time with the parents. However, while it is true that section (b) of N.C.G.S. § 50-13.4 states that parents have an equal duty to support their children, it does not mean that both parents must provide equal child support contributions. Plott, 313 N.C. at 68, 326 S.E.2d at 867 (1985). "'Rather, the amount of each parent's obligation varies in accordance with their respective financial resources.'" Id. (quoting German v. German, 37 Md. App. 120, 123, 376 A.2d 115, 117 (1977)). The trial court must determine financial contributions ofthe parents on a case-by-case basis and, in so doing, may consider the ability and inability of each party to provide support. Plott, 313 N.C. at 68, 326 S.E.2d at 867; see also N.C. Gen. Stat. § 50-13.4(b). There is no requirement that the parents pay equal amounts of child support when they do not have equal abilities to pay.
Plaintiff also argues that a special worksheet is required when the presumptive child support guidelines apply, but he does not argue that the guidelines apply in this case. The guidelines do not apply because plaintiff, by his own admission earns more than $20,000 per month. Although N.C. Gen. Stat. § 50-13.4 mandates that the trial court use the presumptive guidelines when determining child support contribution levels, the guidelines themselves state that "[i]n cases in which the parents' combined adjusted gross income is more than $20,000 per month ($240,000 per year), the supporting parent's basic child support obligation cannot be determined by using the child support schedule." North Carolina Child Support Guidelines, Rev. 10/02, p. 2. The guidelines further state that in cases involving high combined income, "the court should, on a case by case basis, consider the reasonable needs of the child(ren) and the relative ability of each parent to provide support." Id.
Furthermore, plaintiff ignores that even if the guidelines did apply, the worksheet to which he refers bases the contributions of each parent on their individual monthly incomes. Specifically, the guidelines state that in shared custody cases, the parents' combined basic support obligation is increased by 50% (multiplied by 1.5) and is allocated between the parents based on their respective incomes and the amount of time the children live with the other parent. . . . After child support obligations are calculated for both parents, the parent with the higher child support obligation is ordered to pay the difference between his or her presumptive child support obligation and the other parent's presumptive child support obligation.
Id. at 5. This instruction is consistent with the guidelines' underlying assumption that "child support is a shared parental obligation and that a child should receive the same proportion of parental income he or she would have received if the child's parents lived together." Id. at 2.
Thus, the reasonable needs of the children and the relative abilities of the parents to provide financial support are primary factors the trial court must use to determine the child support contributions of each parent. The trial court in the present case did precisely that. Plaintiff earns more than $38,000 per month and has ownership interests in various companies that are worth approximately $2,000,000. Defendant, by contrast, is not currently employed and does not have any monthly income, although we note that she is expected to "take steps in the near future to develop, and use, her earning capacity." In this case, the trial court did not abuse its discretion in ordering plaintiff to pay one hundred percent of the child support. This arrangement correctly reflects that the children would have received one hundred percent of their financial support from the parent earning the income if the parents had been living together. We affirm the order of the trial court.
Affirmed.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).